IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

WILLIAM B. REGIS                                                                PLAINTIFF

v.                                       Civil No. 10-3083

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                   DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, William Regis, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

The plaintiff filed his application for DIB on May 19, 2006, alleging disability since August 20, 2005, due to explosive personality disorder, depression, anxiety, back problems, panic attacks, poor circulation, stomach problems, and a history of head injuries. Tr. 64-65, 83-84. An administrative hearing was held on November 17, 2008. Tr. 524-547. His claims were denied at both the initial and reconsideration levels. Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 43 years old. Tr. 530. Records indicate he had an eleventh grade education. Tr. 527. He had past relevant work ("PRW") experience as a pinstriper and supervisor. Tr. 542-543.

On August 6, 2008, the ALJ found that plaintiff's lumbar spondylosis, intermittent explosive disorder, post-traumatic stress disorder ("PTSD"), personality disorder with antisocial personality traits, borderline intellectual functioning, and cognitive dysfunction were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 15-19. After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to lift and/or carry less than 10 pounds frequently; 20 pounds occasionally; stand and/or walk for a total of six hours each in an eight-hour workday; and, occasionally climb stairs and ramps, balance, stoop, kneel, and crouch. The ALJ found Plaintiff to be moderately limited with regard to making judgments on simple work-related decisions; understanding, remembering, carrying out, and making judgments on complex work-related decisions; interacting appropriately with supervisors, co-workers, and the public; and, responding appropriately to usual work situations and routine work changes. Tr. 19-23. With the assistance of a vocational expert, the ALJ found plaintiff could perform work as a poultry deboner and eviscerator, shirt presser, and inspector. Tr. 24-25.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on July 16, 2010. Tr. 4-7. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 10, 12.

## II.    Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an

impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.   Discussion:

Under the regulations, "if a claimant files additional medical evidence with a request for review prior to the date of the [Commissioner's] final decision, the Appeals Council MUST consider the additional evidence if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Williams v. Sullivan*, 905 F.2d 214, 215-216 (8th Cir. 1990).  Once it is clear that the Appeals Council has considered newly submitted evidence, we do not evaluate the Appeals Council's decision to deny review.  Instead, our role is limited to deciding whether the administrative law judge's determination is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made.  *See, e.g., Nelson v. Sullivan,* 966 F.2d 363, 366 (8th Cir. 1992); *Browning v. Sullivan,* 958 F.2d 817, 822 (8th Cir. 1992).  Of necessity, that means that we must speculate to some extent on how the administrative law judge would have weighed the newly submitted reports if they had been available for the original hearing. We consider this to be a peculiar task for a reviewing court.  *See Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994).

In the present case, Plaintiff submitted approximately 100 pages of additional medical evidence that was considered by the Appeals Council prior to their denial of review.  In

4

considering the record as a whole, including the new evidence submitted, we note that the ALJ dismissed Plaintiff's explosive personality disorder, due in large part to a notation by Dr. Austin indicating that Plaintiff did not want to increase his Geodon dosage due to fear of further weight gain.[1] The ALJ acknowledged Dr. Austin's statement that Plaintiff would just have to submit to therapy, but noted that Dr. Austin did not believe therapy would be sufficient to control Plaintiff's temper issues. The ALJ also correctly reported that Plaintiff did not return to Dr. Austin after this visit, but did seek additional treatment with Dr. Winslow who referred him to Dr. Bunting. Although the record before the ALJ made clear Plaintiff had been evaluated by Dr. Bunting, he failed to develop the record further by requesting a copy of Dr. Bunting's evaluation. Instead, he used this lack of information against Plaintiff, stating there were no records reflecting that Plaintiff underwent the recommended regular therapy. *See* 20 C.F.R. §404.944 (stating ALJ is under the affirmative duty to fully and fairly develop the record).

We note, however, that the record does indicate that Plaintiff continued to obtain treatment for his explosive personality disorder from Dr. Christopher Winslow,[2] whether or not he underwent treatment with Dr. Bunting. Tr. 208-212, 214-219, 270-271, 372-378, 393, 398-39, 400, 402. This included both therapy and medication management. During this time, Plaintiff's Geodon dosage was increased and decreased, even discontinued at times in lieu of alternative medications. Although weight gain continued to be a side effect throughout his course of

---

[1] The medical evidence reveals that Plaintiff was already obese.

[2] Dr. Winslow specializes in psychosomatic medicine or conditions that seem to result from strong emotional conditions such as anxiety, trauma, depression, anger, or guilt.

AO72A
(Rev. 8/82)

treatment, Plaintiff was compliant with his medications. In spite of this, his moods continued to be irritable, though the reports of physical violence were limited.

Examples of physical violence include reports that Plaintiff lost his last job when a co-worker assaulted him, and Plaintiff lost control, choking him "until he started flopping like a fish."[3] Tr. 543. Then, on October 10, 2005, he reported accidentally shooting his girlfriend in the leg while in the woods looking for prowlers. Tr. 219. To make matters worse, Plaintiff was a felon in possession of a weapon. He was arrested and, while in jail, was charged with assaulting a jailer with a shoe. Tr. 219.

On February 5, 2008, Dr. Winslow completed a medical source statement. Tr. 403-405. Dr. Winslow reported treating Plaintiff since 2005, and stated that Plaintiff had been compliant with his medication. He stated that Plaintiff had cognitive issues secondary to a head injury with markedly decreased impulse control that left him at risk for further episodes of violent acting out. Dr. Winslow reported that Plaintiff had been tried on numerous medications, but continued to have thoughts of violence over everyday issues and delusional ideations. He opined that Plaintiff was disabled due to a head injury, and that his prognosis for improvement was poor to non-existent. Dr. Winslow indicated that Plaintiff's ability to understand, remember, and carry out simple and complex instructions; make judgments on simple and complex work-related decisions; interact with the public, co-workers, and supervisors; and respond appropriately to usual work situations and changes in a routine work setting was moderately limited. Tr. 404

Additional records submitted to and reviewed by the Appeals Council reveal further treatment by Dr. Winslow. On September 16, 2008, Plaintiff's Geodon dosage was again

---

[3] It is not, however, clear whether Plaintiff quit or was fired. He seems to allege both. Tr. 543.

increased. Tr. 407, 500. However, in spite of this, the remaining records, dated through 2009, indicate that his mood remained edgy and irritable. Tr. 407. In May 2009, the stress of his ill mother and his perceived ongoing home situation got the better of him and he got into a fist fight, injuring his hand. Tr. 425-426. Dr. Winslow increased his dosage of Klonopin and switched Plaintiff back to Xanax. Seroquel was also prescribed. Tr. 413.

In 2007, Plaintiff was also diagnosed with possible schizophrenia and possible parasitosis. Records indicate that, in July 2007, Plaintiff had a "run in" with the exterminator because he felt his home was infested with insects he could not see. In August, he presented with complaints of parasite infestation in his FEMA trailer. Tr. 434, 521-523. Plaintiff stated he had passed something in his stool that looked like a worm or a bug. Plaintiff's psychiatric history was noted, and although no evidence of parasitemia was noted, Dr. Lonnie Robinson referred him to UAMS for further evaluation. In October, UAMS confirmed a diagnosis of paranoid parasitosis. Plaintiff then began complaining of shortness of breath and sinus symptoms, which he said were caused by mold growing inside his trailer. Interestingly, Plaintiff was no longer living in the trailer at this time. He and his girlfriend were actually staying with his Grandmother. This led to diagnoses of delusional disorder, possible schizophrenia, and possible sinusitis. Tr. 519-520.

Given the fact that Plaintiff did continue both medical and therapeutic treatment for his mental impairments, we believe remand is necessary to allow the ALJ to reconsider this evidence and evaluate the additional evidence submitted to the Appeals Council. Had this evidence been before the ALJ, it seems clear to the undersigned that it would have impacted his decision. And, given Plaintiff's voilent propensities, we believe this evidence must be taken into consideration when formulating an RFC.

7

AO72A
(Rev. 8/82)

Further, in light of the evidence revealing a diagnosis of a delusional disorder, we believe the ALJ should also obtain an RFC assessment from Dr. Robinson, as this could impact Plaintiff's ability to perform work-related activities. Accordingly, on remand, the ALJ is directed to address interrogatories to Dr. Robinson, asking him to review plaintiff's medical records; to complete a mental and physical RFC assessment regarding plaintiff's capabilities during the time period in question; and, to give the objective basis for his opinion, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

The new and additional evidence also included recent lumbar x-ray and MRI results, as well as treatment for lower back pain. On remand, this evidence must also be considered by the ALJ.

## IV. Conclusion:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 29th day of November 2011.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)